Case number 24-1570 from the District of Northern Iowa, United States v. Mario Gibson. All right, we'll proceed with argument. Counsel, counsel for the appellate, you may proceed when you're ready. May it please the Court, counsel, my name is Mark Meyer representing Mr. Gibson. This is a case involving the right of confrontation in the context of a supervised release proceeding. Mr. Gibson's supervised release was revoked on the grounds that he had committed a new law violation. The witnesses, the main witnesses in the case did not appear in court to testify the subject to cross-examination, but instead the judge relied on a videotape, body camera, of what the main witness said after she was stopped for driving a stolen vehicle. I would submit that this case is a lot like another case this Court has decided, United States v. Timmons. Timmons also involved witnesses who did not appear in court, but their testimony was presented at the revocation hearing by way of videotapes. Also in Timmons, there was some effort to subpoena the witnesses, but not enough to overcome the fact that the witnesses didn't testify and that this Court found that they were not particularly, there were not sufficient indicia of reliability. Does the fact that there's a videotape affect that assessment of whether there's, whether it's reliable? It's sort of an interesting new development in this kind of case because typically we've got the, it's the officer who comes in and says, well, I couldn't find them, but here's what they'd say. Now we've got a video, and it almost seems to sort of collapse the initial question of whether it's sufficiently reliable to be considered with an assessment of whether the Court believes it or not. Do you look at those any differently? You know, what I can say is in this case, the judge said it was different because he could watch the demeanor of the witness and listen to her voice. The witness I'm talking about is the driver of the stolen vehicle who said that she had obtained the vehicle from a person she identified as Mario Gibson. So, but I would say that's, then you're getting pretty subjective, you know. Does the Court's subjective view of the witness's demeanor and listening to her voice, does that somehow substitute for the right to have the witness brought into court and questioned, you know, eyeball to eyeball? So you mean, like, the right to sort of, well, not the right, but the first part of the assessment, which is based on these sort of maybe more objective standards as to whether it's sufficiently reliable to even come in? Are you saying that, or is that what you're saying, that then the district court is imposing sort of a subjective assessment into that analysis that you think is not proper? Yes, there was United States v. Martin. This didn't involve a videotape, but it did involve what a victim said to an emergency room physician. And the Court found that comes with certain indicia of reliability because what they said was corroborated by, you know, the injuries to the victim, right? So if there's some objective corroboration to the witness's statements, then that, you know, is a step towards indicia of reliability. But when you just have the witness's statement when she's trying to explain, well, how is it that you're driving a stolen car that's registered to your boyfriend's cousin, you know, I think that it's going too far just for a judge to say, well, I looked at the video and I thought she was credible. So, you know, that's really the gist of my argument. Could I ask about the efforts on the part of the government and its agents to locate the witnesses? As I understood what the government said at the second hearing was basically there was, and I'm paraphrasing and tell me if I'm wrong, but that they didn't have any new leads. So they didn't do anything else to try to find these. Is that enough to just say we didn't come upon any new leads, or is there any kind of affirmative obligation to try again when you've got the continuance? Well, again, Timmons was like that. A single failed attempt to subpoena does not, as the government claims, constitute a reasonable satisfactory explanation. Do you think that what the government did the first time around was sufficient? Like, let's say this stopped at the first hearing, and they had presented all of their efforts to try to find both of these people. Do you think that was enough? I mean, if we didn't go on to the second one and there was 30 more days or 60 more days to do more work, would you, is that enough? You know, under Timmons and Sutton, if the witnesses are local, right, I don't think under those cases just an effort to find, a single effort to find the witnesses, then throw up your hands and say, well, we can't find them, is enough. I think there are cases that talk about paths not followed. I guess if you can't find the witnesses, the fuller, the driver, was on probation. You know, go back to the probation officer and ask, well, I couldn't, you know, she wasn't at the address you told me, do you have any additional leads? Where else can we go with this? But just to say, well, you know, she's moved out, don't know where she is, I don't think is enough under Sutton and Timmons, Your Honor. So I'll reserve any additional time. Real quickly before you, on that one point. Okay. I just want to make sure I understand you correctly. But do you think by the end, the efforts, like, you know, going to the work and making phone calls and asking folks, I think, where the witness was, do you think that satisfies that? I didn't catch your answer to that part of it. Or do you still think it falls short, even after all of those extra efforts? Well, I sure think it falls short, given the fact that there was another month to go look again. But I think Judge Kelly and I think your question, Judge Strauss, is, well, what about if there hadn't been a second, you know, a second hearing? And I'm not willing even to concede that under the Timmons and Sutton standards. Standards. So I'll reserve any additional time. You may proceed. May it please the Court, Counsel. Nicole Lynn Nagan on behalf of the United States of America. The District Court appropriately considered prior video-recorded statements of two witnesses and in doing so determined that unavailability had been shown by good cause and that these statements were otherwise reliable. And on de novo review, this Court has the ability to consider the entire context of that record and see how those reliable statements are not only reliable in and of themselves through that video, but also through corroboration in the record of various other means. If we first consider the unavailability of these witnesses, I would like to dispute my brother's assertion that this case is similar to Timmons. In Timmons, the District Court essentially explained that the government barely made attempts to serve a subpoena. In fact, there was one attempt the day prior to the hearing. In Sutton, there was attempts at one residence to make a service of a subpoena, but they completely ignored another residence when they believed a witness to live there. Instead, what I would argue is that this case is more akin to the recently decided Harris case or some other cases where the government made multiple attempts through varied means, but essentially had no further leads. Well, what about this continuance? As I understand it, it was the government who sought the continuance because you needed your witness to come in. He was unavailable for the first hearing. So even if the efforts that the government put forth for the first hearing were sufficient, government seeks a continuance to get their one witness there. Should there be no obligation to sort of like, well, we'll give it a go again? Councils represented that one was on probation, sort of jobs, locations move. What about that obligation? Because I think the District Court actually asked the prosecutor, what have you done since the last hearing to get these folks here? And I think it was really nothing. Sure. So just to clarify the record, the witness who was unserved for that hearing had actually been served for the first revocation hearing, showed up for that hearing, and then couldn't be reserved when the hearing was rescheduled. So it wasn't that he was unavailable. It's just that the new date had not been provided to this witness. So that's a separate witness completely, but just so the record is clear. As to the government's availability to attempt to reserve, essentially I would argue similar to what I argued before the District Court. The trooper's testimony was that he had basically exhausted every means he had available to him. He used multiple phone numbers, and if we look at the record, those phone numbers were provided from various sources, including a database known as Fusion Center. And if we look at Defense Exhibits J, which talks about the probationary status of one of these witnesses, that is where the alternative phone number came about. There was varied phone numbers, and the trooper explained this. So multiple phone numbers were used, as well as multiple addresses. It should also be noted that the trooper left his contact information at all these locations in the hopes that someone may potentially reach out to him and say, oh, yes, my mail was forwarded, or I went and got my mail. Potentially then he would have the opportunity to reserve. But once you've exhausted all of these means, the question becomes is where else should the trooper have gone? Was this about a 30-day continuance? Is that about right? Essentially, I believe that's correct, Your Honor. Does that matter? What if it had been a six-month delay, and six months down the road you're in the same spot? Do you think the government would have any obligation to try again? I think it would depend on the circumstance. How about here? Let's just take all of just what you have represented was the record at the time of the first hearing. Now we're six months out instead of one. Potentially, if new information had become available to the police or the government, then, yes, it might have changed. But doesn't that sort of, like, new information? That's suggesting that if new information lands on my desk, if the witnesses come and say, I'd really like to testify in federal court, and you can let me know if that ever happens. But what about the officer's efforts to actually go find those people and say, hey, here, now you're served? Sure. So arguably the government's position here is that there were no other attempts that the trooper could have done. In six months, potentially, if he had new information, there may have been other attempts. But that's hard to think about in the context of six months because we don't know what information was available. But I think what's important to remember here is that there are situations where this court has found that unavailability can be as simple as making a phone call to a 911 caller, and that number is no longer in service, and that witness is unavailable. And because the reason for good cause and unavailability is not necessarily strong good cause, and that's what this Court articulated in Harris, that unavailability is not absolutely every opportunity to find these witnesses. It's good cause. It's also important to remember that this is a balancing test. It's a balancing test between unavailability and reliability. And in many circumstances in which this Court has found that the government did not meet its burden on unavailability, what it then goes on to explain is that these statements aren't reliable because they are not corroborated via other evidence in the record. And that is what drastically sets this case apart from many other cases where this Court has found that evidence of hearsay statement should not come in. Because reliability can be assessed in a variety of contexts, but here we have reliable statements because they're video recorded. And that's essentially what the district court articulated. Before we move on from unavailability, the question I had, because I just frankly don't remember, is the standard for unavailability the same in a revocation proceeding versus a criminal trial? I know that the basis is different, right? So a confrontation clause under the Sixth Amendment, and for revocation it's a due process clause, I believe. Do you know whether the standard is the same or different? And if you do, or if you don't, should it be? My understanding is that the standard is not the same, and that is because we are not governed under the Constitution or those rules. We're following rules of procedure here under Rule 32, and this has been essentially due process rights that we have found defendants to have in this context, which essentially is why the standard is different on review, but goes to the fact that supervised release hearings are different. And so while this Court has found that unavailability can be when a witness simply refused to testify, that wouldn't be a means by which in a criminal trial a victim of domestic assault could simply say, I don't want to testify. So it is different. And that's important because depending on the circumstances, those differences matter for unavailability. And I would argue here that the circumstances of the unavailability when we see these troopers' attempts and then consider the reliability of this statement shows why it was appropriate for the District Court to consider these statements. And so just briefly turning to reliability with my time left, the District Court had the opportunity to consider these statements as they were made by these witnesses in real time, directly as the traffic stop was happening. And I would point this Court to Government's Exhibit 2 and note that when these witnesses were making the statements, identifying the phone number of the individual who they purchased the car from, the name of the person who they purchased the car from, and the location of where they purchased the car, all of those statements were made before Ms. Fuller had been told by the trooper that the car had been reported stolen. So essentially during the traffic stop, they're sharing this information. And I would argue on its own, that makes these statements reliable. But then what becomes incredibly apparent from the record is after all these statements come about, then the trooper looks up the phone number, and the phone number is affiliated with Mario Gibson. That's independent of these witnesses' statements. How much of this relies on the fact that it's a video versus suppose the officer had just come in and testified this is what the witness said. It would all be hearsay, but how much of your argument is contingent on the video itself? So in this case, I believe the corroboration of the other elements would allow this hearsay in. I believe that the corroboration is sufficient because there was so much corroboration in this case of the phone number, the identification, the address, all these elements that came in through direct testimony, through documentary exhibits. But I think that the district court saw it as, and it did push it over the edge, the fact that the district court could watch this witness in real time and assess her credibility, arguably that goes both to reliability and credibility. So potentially if it came in as reliable through corroboration, maybe the court wouldn't have been able to credit those statements as much. But either way, when statements, unsworn statements of a witness come in, they can be corroborated through other means, and that can make them reliable. And so if there are no further questions from this court on either of those prongs, the government urges this panel to affirm the judgment of the district court. Thank you. Thank you, counsel. Ms. Meyer, you have a minute, 54. As I was listening to the argument, it occurred to me that there is indeed a balancing test between the reasons for unavailability and the reliability of the witness. But you do need both. You have to find, the district court needs to find both, correct? Right. And it's a sliding scale. The less reliable the witness, the more compelling the reason for the witness not being there has to be, or the other way around, I suppose. So the fact, I mean, it could easily be assumed that these witnesses made themselves unavailable because they didn't want to come to court and confront the fact that Ms. Fuller was driving a stolen vehicle that was registered to her boyfriend's cousin. The name on the bill of sale was not the boyfriend's, it was the boyfriend's cousin. It wasn't, let me get this straight. The name on the bill of sale was the boyfriend's cousin, but the person she claimed that signed the bill of sale obviously wasn't. She knows who her boyfriend's cousin is. She never then took the step of registering the vehicle. You know, I wonder why. So anyway, I'm running out of time here, but the fact that the witness was unavailable helps demonstrate her unreliability. She lied about where she was living, where she was working, and other factors that are listed in the brief. So thank you very much. I appreciate your time. Very well, counsel. Thank you for your arguments. They've been very helpful. The case will be submitted. We'll render a decision in due course. And before you stand aside, Mr. Meyer, the court would like to express its thanks for your service under the Criminal Justice Act. Always a pleasure to come to St. Paul, Your Honor. Thank you. You may stand aside.